UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 10098

------------------------------------------------------------------------x

L.T. ROBINSON, JR.,

                   *Plaintiff*,

        *v.*

ARCHCARE *and* TERENCE CARDINAL COOKE
HEALTH CARE CENTER,

                  *Defendants*.

------------------------------------------------------------------------x

**COMPLAINT**

**14 Civ. ___**

RECEIVED
DEC 2 3 2014
U.S.D.C. S.D. N.Y.

Plaintiff L.T. Robinson, Jr., by his counsel, The Harman Firm, PC, alleges for his complaint against Defendant Archcare and Defendant Terence Cardinal Cooke Health Care Center as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff L.T. Robinson, Jr. ("Mr. Robinson") worked as a Licensed Practical Nurse ("LPN") for Defendants Archcare and Terence Cardinal Cooke Health Care Center ("TCC") (collectively "Defendants"). This action seeks damages for Defendants' illegal termination of Mr. Robinson's employment based upon his sexual orientation pursuant to New York City Human Rights Law, as codified at N.Y.C. ADMIN. CODE §§ 8-101-31 ("NYCHRL"). Defendants deliberately discriminated against and terminated Mr. Robinson because he is gay.

## JURISDICTION AND VENUE

2.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over Plaintiff's claim because the amount in controversy exceeds $75,000 and Plaintiff and Defendants are citizens of different States.

3.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred within this District and, upon information and belief, as Defendants' principal places of business are in this District.

## TRIAL BY JURY

4.     Plaintiff respectfully requests a trial before a jury.

## PARTIES

5.     At all times relevant hereto, Plaintiff Robinson was and is a resident of Essex County, New Jersey.

6.     At all times relevant hereto, upon information and belief, Defendant Archcare is a not-for-profit health care organization organized under the laws of New York with its principal place of business at 205 Lexington Avenue, New York, NY 10016.

7.     At all times relevant hereto, upon information and belief, Defendant Terence Cardinal Cooke Health Care Center is a Health Care Center organized under the laws of New York with its principal place of business at 1249 Fifth Avenue, New York, NY 10029.

## STATEMENT OF FACTS

8.     Plaintiff Robinson is openly gay.

9.     On or about November 11, 2013, Mr. Robinson was hired as an LPN by Archcare and TCC to work at TCC's Manhattan healthcare facility at 1249 Fifth Avenue, New York, NY.

2

10.     Mr. Robinson lives in Newark, New Jersey and commuted to work to the TCC facility in Manhattan.

11.     Mr. Robinson was hired to work two (2) shifts of eight (8) hours per week at $27.04 per hour, but because of his hard work and skill, he regularly worked between forty (40) and eighty (80) hours per week.

12.     Mr. Robinson primarily worked the evening shift, from 3 p.m. to 11 p.m., but would frequently work the morning shift as well, from 7 a.m. to 3 p.m.

13.     In and around June of 2014, Mr. Robinson requested a locker at the hospital to store his possessions, such as his uniforms and personal hygiene items.

14.     Defendants provided other similarly situated hospital employees with lockers where the employees stored their possessions; many employees use more than one locker. These lockers are located in an employees-only area.

15.     Defendants denied Mr. Robinson's request for a locker.

16.     Mr. Robinson asked Defendants for permission to clean out an unused locker that was full of garbage, to use it for his own. Defendants approved this request.

17.     On or about June 8, 2014, the first day he was using the locker, one of Defendants' employees broke into his locker. He or she vandalized the locker writing, "Fuck you you fucking homo, go fuck yourself," and stole its contents.

18.     Mr. Robinson filed a complaint with Defendants' security department, but received no response to his complaint.

19.     Mr. Robinson gave a copy of this complaint to his Nursing Supervisor, Ms. Forbes, who expressed shock at the vandalism; however, she initiated no action on Mr. Robinson's behalf.

20.     Defendants never investigated this incident or responded to Mr. Robinson's complaint despite the atrocity of the actions directed at Mr. Robinson.

21.     During Mr. Robinson's tenure with Defendants as an LPN, many of Defendants' other nurses and assistants discriminated against Mr. Robinson because he is gay.

22.     The nurses on the morning shift were particularly hostile to Mr. Robinson.  Lily Osei, a Certified Nursing Assistant ("CNA") was the most egregious in her discrimination.

23.     Ms. Osei would only refer to Mr. Robinsons as "kuchu," both to his face, and to her coworkers.

24.     "Kuchu" is a word of Swahili origin used for homosexuals and transgendered individuals.  It is primarily associated with Uganda, but is also used in other countries.  It is often used by non-homosexual or non-transgendered individuals as derogatory term for those groups.

25.     Ms. Osei and other staff on the morning shift would fail to do their assigned tasks in order to make Mr. Robinson's job harder; for example, Ms. Osei frequently failed to record patients' vital signs for Mr. Robinson's patients; by contrast, she did perform this task for other LPN's patients.

26.     Mr. Robinson made an official complaint to Defendants about the nurses' discrimination, but Defendants took no actions to stop it.

27.     In fact, Mr. Robinson was reprimanded by one of his supervisors for making the complaint; the supervisor stated that she preferred to handle things quietly herself.

28.    On or about July 27, 2014, Defendants began miscommunicating information regarding Mr. Robinson's shifts and scheduling to him.

29.    For example, on or about July 28, 2014, Mr. Robinson was reprimanded by one Nursing Supervisor for missing work, after receiving specific instructions from another Nursing Supervisor not to come in to work on the day in question.   Defendant's actions made it impossible for Mr. Robinson to satisfy his schedule.

30.    On or about July 29, 2014, Mr. Robinson attended the standard pre-shift nurses' meeting.   During these meetings, the nurses gather around a nursing station and discuss the upcoming shift.

31.    During the subject meeting, a woman behind Mr. Robinson kept repeating, "excuse me Miss."   After several repetitions, Mr. Robinson turned around to see who was speaking and whom she was addressing.

32.    In the process of turning, Mr. Robinson bumped into Ms. Osei, who was standing a few inches away from Mr. Robinson, and who had been the one repeating, "excuse me Miss."

33.    Nurse Osei immediately started hitting Mr. Robinson, and began shouting at him about "sexual harassment."

34.    Immediately after this incident, Mr. Robinson went to his supervisor, Ms. Hall, a Director of Nursing at TCC, to report what had happened, at which point Ms. Osei began conferring with the other morning shift nurses who had previously discriminated against Mr. Robinson.

35.    Ms. Hall told Mr. Robinson to write a statement describing the incident; Mr. Robinson did so, and gave it to Ms. Hall.

36.     Mr. Robinson then faxed his statement to Ms. McGibbon, a Director of Nursing.

37.     Mr. Robinson then met with Ms. McGibbon, who asked Mr. Robinson to type his statement. Mr. Robinson did so.

38.     On or about July 30, 2014, Mr. Robinson was assigned to his regular shift, and performed his duties without incident.

39.     On or about August 1, 2014, Mr. Robinson was approached by another supervisor, Ms. Benson, who said she was investigating the incident. Ms. Benson asked Mr. Robinson only one question, inquiring as to how the incident ended. Mr. Robinson replied that he ended the confrontation by leaving to speak to Ms. Hall.

40.     On or about August 5, 2014, Defendants called Mr. Robinson into a meeting with Ms. Osei to discuss the incident.

41.     Ms. Osei claimed that Mr. Robinson assaulted her during the nurses meeting by forcefully grabbing her breasts. Mr. Robinson adamantly denied her accusation, and suggested that Defendants review the security footage from the camera located above the nurses station where the meeting in question was held. This meeting ended inconclusively.

42.     Ms. Osei's baseless accusations against Mr. Robinson were part of her broader efforts to malign, debase, and humiliate Mr. Robinson; she waged this campaign against Mr. Robinson solely because of his sexual orientation.

43.     Mr. Robinson complained previously of Ms. Osei's improper actions, yet Defendants did nothing to alleviate the discrimination. Instead, they too illegally discriminated against Mr. Robinson because of his sexual orientation, and retaliated against him for complaining of sexual orientation discrimination.

44.     On or about August 6, 2014, Ms. Hall called Mr. Robinson into her office and told him to obtain a union delegate. Mr. Robinson did so and, upon his return, Ms. Hall handed Mr. Robinson a disciplinary notice suspending him, directing him to sign it.

45.     Mr. Robinson asked Ms. Hall to allow him to review the notice with his delegate, but she refused. Mr. Robinson then declined to sign the notice, which the union delegate then signed instead.

46.     On or about August 16, 2014, Mr. Robinson received a letter from Archcare, dated August 14, 2014, terminating his employment.

47.     Defendants illegally terminated Mr. Robinson because of his sexual orientation, and because of the complaints he made against others who were discriminating against him.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Illegal Termination based on Sexual Orientation Discrimination under the NYCHRL

48.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 47 with the same force as though separately alleged herein.

49.     NYCHRL § 8-107 mandates that no employer discriminate against an employee in compensation or in terms, conditions or privileges of employment on the basis of his or her sexual orientation.

50.     Mr. Robinson repeatedly complained of discriminatory conduct to Defendants; Defendants failed to take any corrective action. Instead, Defendant terminated Mr. Robinson based on false allegations made by the individuals that Mr. Robinson had previously identified as discriminating against him.

51.     Defendants violated NYCHRL § 8-107 by fostering a discriminatory hostile work environment, and then wrongfully terminating Plaintiff due to his sexual orientation.

52.     As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

53.     Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

## SECOND CAUSE OF ACTION
### Illegal Retaliatory Termination for Complaining of Sexual Orientation Discrimination under the NYCHRL

54.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 53 with the same force as though separately alleged herein.

55.     NYCHRL § 8-107 mandates that no employer discriminate against an employee in compensation or in terms, conditions or privileges of employment because of that employee's opposition to an unlawful discriminatory practice.

56.     Mr. Robinson complained of both the heinous vandalism committed against his locker on Defendants' premises, and the discriminatory conduct by his coworkers against him.

57.     Shortly thereafter, Defendants terminated Mr. Robinson's employment in retaliation for his complaints, in violation of the NYCHRL.

58.     As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

59.    Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.    For the first claim, actual damages to be determined at trial, but in no event less than $900,000;

B.    For the second claim, actual damages to be determined at trial, but in no event less than $900,000;

C.    An award of compensatory and punitive damages;

D.    Pre-judgment and post-judgment interest;

E.    Attorneys' fees and costs; and

F.    Such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            December 23, 2014

By:    _Walker G. Harman, Jr._
       Walker G. Harman, Jr. [WH-8044]
       Ronnie L. Silverberg [RS–6881]
       THE HARMAN FIRM, P.C.
       *Attorneys for Plaintiff*
       1776 Broadway, Suite 2030
       New York, NY 10019
       (212) 425-2600
       wharman@theharmanfirm.com
       rsilverberg@theharmanfirm.com